**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | | |
|---|---|---|
| **KHALIL ABOUKORA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | 3:04-CV-0059 (CAR) |
| | : | |
| **KEEBLER COMPANY and,** | : | |
| **KELLOGG USA, INC.,** | : | |
| | : | |
| **Defendants.** | : | |

*ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE*

Before the Court are Defendants' Motion for Summary Judgment [Doc 27] and Defendants' Motion to Strike [Doc. 42] . Plaintiff has responded to both motions. For the reasons stated below, Defendants' Motion for Summary Judgment is **DENIED** and Defendants' Motion to Strike is **DENIED**.

## BACKGROUND

The claims at issue in this case relate to violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Plaintiff, Khalil Aboukora, a former employee of Keebler Company ("Keebler"), brings this action against Keebler and Keebler's parent company, Kellogg USA ("Kellogg") (collectively, "Defendants"), alleging that Defendants wrongfully terminated Plaintiff both in interference with and retaliation for the exercise of his rights under the FMLA.

### Defendants' Motion to Strike

Before discussing Defendants' Motion for Summary Judgment, the Court will address Defendants' Motion to Strike. Through their motion, Defendants move to strike certain evidence Plaintiff submitted as attachments to his Response to Defendant's Motion for Summary Judgment.

[Doc 35].  First, Defendants seek to strike excerpts of Plaintiff's medical records and certain prescription drug information Plaintiff submitted from "MedlinePlus," a government website service of the U.S. National Library of Medicine and the National Institutes of Health.  [Doc 35, Attachments 2-4, 6-9, 11, and 13-14].  Defendants contend that the medical records Plaintiff attached to its Response to Defendants' Motion for Summary Judgment are irrelevant because Plaintiff did not submit these medical records to Keebler in 2003 when Plaintiff was requesting FMLA leave, so these records were not used to make any decisions regarding Plaintiff's employment.  Plaintiff responds that the medical records and prescription drug information provide evidence showing that Plaintiff had a serious health condition, which is a disputed issue in this case.  The Court finds that there are issues of material fact relating to whether Plaintiff had a serious health condition, as discussed below, *without reference to the medical records* at issue in the Motion to Strike.  If necessary, this Court will take up the issue of whether to exclude these medical records from evidence if this case goes to trial.

Second, Defendants move to strike Plaintiff's Statement of Material Facts as to Which There Exists a Genuine Issue to Be Tried ("Plaintiff's Statement of Disputed Facts").  [Doc 34, Attachment 1].  Defendants contend that Plaintiff's Statement of Disputed Facts should be stricken because it does not conform to Local Rule 56 -- Plaintiff did not submit statements of material facts and instead submitted questions which go to the ultimate issues in this case.  The Court does not find this argument persuasive.  Local Rule 56 states, "[t]he respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried."  In compliance with Local Rule 56, Plaintiff filed a Response to Movants' Numbered Material Facts [Doc 35, Attachment 1].

2

Plaintiff filed his Statement of Disputed Facts as a supplemental attachment.  The Court does not find it to be in violation of Local Rule 56 and will not strike it from the record.

## STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).  Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.  See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence.  See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law.  Celotex, 477 U.S. at 323.

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled

to a judgment as a matter of law.  See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions.  See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).  Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof."  Celotex, 477 U.S. at 323.

## FINDINGS OF FACT

The facts relied upon by the Court in arriving at its decision, taken in the light most favorable to Plaintiff, are as follow:

On October 2, 2003, Plaintiff was terminated by Defendants for excessive absences under their no-fault attendance policy.  Plaintiff states his back pain and stomach/gastrointestinal problems were the cause of his absences.  Prior to his termination, Plaintiff attempted to certify that his absences qualified as FMLA leave, but because Defendants found Plaintiff's FMLA paperwork inadequate, Defendants concluded Plaintiff's absences did not qualify as FMLA leave and terminated him for excessive absences.

Plaintiff was hired by Keebler[1] in July 1999 to work as a line attendant at the Athens Packaging Facility ("Athens Packaging").  As a line attendant, Plaintiff was responsible for many jobs such as cutting cardboard, removing raw materials from boxes, delivering the materials to the production machine operator, and plastic-wrapping boxes when the boxes were ready to be shipped. (P depo. p. 24, decl. ¶ 5).  While at work, Plaintiff stood continuously and was required to bend and lift heavy, full boxes of product, some weighing the equivalent of a 19-inch television. (P decl. ¶6).

---

[1] Defendant Kellogg purchased Keebler in 2001.

While there is some dispute as to the exact attendance policy in place during 2003,[2] it is clear that Athens Packaging maintained a "no-fault" attendance policy based on a point system. (Wilson depo. p. 12-13). Employees received points for absences from work, and once an employee accumulated ten points, the policy allowed for that employee to be suspended, pending an investigation. (Wilson depo. p. 36-27, Ex 4). If an investigation revealed that there were no extenuating circumstances, the policy allowed for that employee to be terminated. (Id.) Employees were not assessed points for absences pursuant to the FMLA. (Wilson depo. p. 36).

Plaintiff suffers from two health-related conditions that are pertinent to this case: back pain and stomach/gastrointestinal problems. Plaintiff's back problems began in 1997, before he was hired by Keebler, and Plaintiff's doctor has diagnosed him with kyphosis[3] of thoracic spine. (P depo. p. 18, 20; P decl ¶10, Wilson depo. Ex. 9). Plaintiff's stomach problems began prior to 2001, and Plaintiff has also been diagnosed with irritable bowel syndrome. (P depo. p. 72-73, Wilson depo. Ex. 20). Plaintiff states that both his back pain and his stomach problems have caused him to be unable to perform his duties as a line attendant and periodically miss work since 2001. (P decl. ¶11, ¶13).

In fact, because of Plaintiff's back pain and stomach problems, Plaintiff was twice granted intermittent FMLA leave. (P depo. Ex. 24, Wilson depo. Ex. 7). Plaintiff was first granted FMLA leave in April 2002 for his abdominal pain. (P depo. p. 98, Ex. 24). Under this leave, Plaintiff took nine days of FMLA leave in 2002 over a period of six months. (P depo. Ex. 24, Ex. 26). Plaintiff's second request for FMLA leave was granted on March 6, 2003 and was granted due to Plaintiff's

---

[2] The Defendants were unable to produce a copy of the attendance policy that was in effect in 2003.

[3] Kyphosis is defined a curvature of the spine.

back problems.  (Wilson depo. Ex. 7).

Plaintiff states the symptoms caused by both his back pain and his gastrointestinal problems became more frequent in June, causing him to miss 2 days of work in June 2003 and 6 days of work in July 2003.  (P decl. ¶23, P depo. Ex. 27).  On July 28, 2003, Plaintiff was informed by the new human resources manager[4] that his FMLA paperwork approved in March 2003 expired "as of today" and that he had accumulated eight points under the company's attendance policy for his absences in June and July 2003.  (P depo. Ex. 27).  The letter informed Plaintiff that he needed to submit updated FMLA paperwork by August 12, 2003.  (Id.).

On July 29, 2003, Plaintiff submitted two updated FMLA certification forms completed by his doctor, one pertaining to his back problems and the other pertaining to his stomach/gastrointestinal problems.  (Wilson depo. Ex. 8, 10).  On the certification pertaining to Plaintiff's back pain, Plaintiff's doctor did not complete the form, leaving four questions unanswered.  (Wilson depo. Ex. 8). Plaintiff's doctor answered question #3, by checking line (4), indicating that Plaintiff had a serious chronic health condition which may cause episodic rather than a continuing period of incapacity. (Id.).  Plaintiff's doctor also answered question 4, "describe the medical facts which support your certification," stating that Plaintiff has "kyphosis of thoracic spine."  (Wilson depo. Ex. 8).  In response to question 5c, "[i]f the condition is a chronic condition . . . state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity," Plaintiff's doctor wrote, "not incapacitated."   (Id.).  Plaintiff's doctor did not answer the questions pertaining to the date Plaintiff's condition commenced, whether it would

---

[4] In June 2003, Athens Packaging hired a new human resources manager, Michelle Wilson, to fill the position formerly held by Robin Martin, who left Athens Packaging sometime in May 2003.

be necessary for Plaintiff to work intermittently, or whether Plaintiff was unable to perform any one or more functions of his job. (Id.).

On the certification pertaining to Plaintiff's stomach/gastrointestinal problems, Plaintiff's doctor answered all of the questions on the form. (Wilson depo. Ex. 10).  Plaintiff's doctor stated that Plaintiff has abdominal pain, that the condition commenced on April 18, 2002 and that Plaintiff's "medical condition may require him to be absent and/or late to work certain times." (Id.). In response to question 5c, "state whether the patient is presently incapacitated," the doctor wrote "N/A." (Id.). Finally, in response to the question pertaining to whether Plaintiff would be unable to perform any one or more functions of his job, the doctor wrote, "refer to statement on front of the form." (Id.). On the front of the form was the doctor's statement that Plaintiff's "medical condition may require him to be absent and/or late to work certain times." (Id.).

The day after Plaintiff submitted the two certifications, on July 30, 2003, Plaintiff received written notice that these certifications were "incomplete/insufficient" because "required information was left blank." (Wilson depo. Ex. 11, 12).  Plaintiff was given 15 days to cure the defect.  Plaintiff apparently submitted another certification between July 30, 2003 and August 14, 2003 that human resources again rejected as "incomplete/insufficient." (Wilson depo. Ex. 13).  Human resources identified the problems as "required information was left blank" and "on #3 your physician checked [category] 4 and failed to fill out 5c, 6 & 7." (Id.).  Plaintiff was again given 15 days to cure the defects. (Id.).

On September 4, 2003, Plaintiff submitted a fourth FMLA certification form filled out by his doctor.  On this form the doctor filled out questions 5c, 6 and 7 stating Plaintiff was "not incapacitated," that he would "see patient when his condition warrants," and that Plaintiff was not

unable to perform work of any kind. (Wilson depo. Ex. 15). On September 8, 2003, because Plaintiff had accumulated the maximum of ten points, Plaintiff was suspended from work pending further investigation.  (Wilson depo. Ex. 14).  On September 26, 2003, human resources notified Plaintiff that he had accumulated 17 points under the attendance policy, that all of Plaintiff's FMLA submissions were incomplete (though not specifically identified as to how they were incomplete), and that Plaintiff would be terminated on October 6, 2003 if Plaintiff did not submit proper documentation for his absences by Friday, October 3, 2003.  (Wilson depo. Ex. 17).

On October 1, 2003, two days prior to the October 3, 2003 deadline set by human resources for Plaintiff to submit proper FMLA documentation, Plaintiff submitted a fifth FMLA certification form dated September 29, 2003, which was filled out by his doctor (the "September 29th certification"). (Wilson depo. Ex. 18, 19).  The September 29th certification is the most detailed. Plaintiff's doctor answered every question on the form.  The form certifies that Plaintiff has a chronic serious health condition, identifies Plaintiff's medical conditions as both abdominal pain and back pain, states the dates Plaintiff was seen by his doctor, specifically states Plaintiff's "medical condition may require him to be absent and/or late to work at certain times," states Plaintiff is not presently incapacitated, and states that it is unknown whether Plaintiff is unable to perform his job. (Wilson depo. Ex. 18).  On October 2, 2003, one day prior to the October 3, 2003 deadline Plaintiff was given to submit information in support of his FMLA request, Plaintiff was terminated for exceeding allowable attendance points.  (Wilson depo. Ex. 21).[5]

_____

[5] Prior to his termination on October 2, 2003, Plaintiff also submitted a letter dated September 17, 2003 from a physical therapist stating that Plaintiff needs to have a break during his work shift to relieve pain (P depo. Ex. 16).  The human resources department at Athens Packaging also received prior to October 6, 2003, the original date in which human resources Plaintiff would be terminated, documentation from a gastroenterologist stating that Plaintiff "has chronic irritable bowel syndrome that will occasionally cause him to miss work and may make it difficult  for him to work unusual work shifts."  (P depo. Ex. 20).

Plaintiff states all of the absences in June, July, August and September 2003were related to his chronic medical conditions which caused him to be unable to perform his job as a line attendant. (P decl. ¶24, 28). Specifically, Plaintiff claims that his health conditions and his FMLA paperwork qualified his absences under the FMLA and that Defendants wrongfully terminated him for excessive absences. Defendants contend that Plaintiff's termination was proper because Plaintiff at no time submitted sufficient paperwork qualifying his absences under the FMLA.

**DISCUSSION**

*Kellogg as a Proper Party*

First, the Court addresses Defendants' contention, asserted in a footnote in their motion for summary judgment, that summary judgment is appropriate as to Kellogg because Kellogg is not a proper party to this action. Defendants contend that Kellogg was not Plaintiff's employer, that when Kellogg acquired Keebler, the Keebler Holding Corporation was formed as a subsidiary of Kellogg, and Plaintiff was employed only by the subsidiary, Keebler, not the parent, Kellogg. Defendants, however, have not presented the Court with any evidence supporting their contention. The record contains no evidence regarding the corporate structure of the companies, and the evidence that is before the Court creates a material issue of fact as to whether Kellogg was, in fact, Plaintiff's employer. There is testimony that "everybody's [pay] check" came from Kellogg (Wilson depo. p. 10-11), that the human resources manager at Athens Packaging could not make decisions regarding FMLA without approval from Kellogg corporate (Wilson depo. p. 13), and that Kellogg provided training and FMLA forms to human resources at Athens Packaging, changed the employee handbook at Athens Packaging, and made all the decisions concerning Plaintiff's FMLA requests. The Court finds that based on the current

9

record in this case, there exists a genuine issue of material fact as to whether Kellogg is a proper

party and an employer of Plaintiff for purposes of the FMLA and that summary judgment for

Kellogg is not appropriate.

*Family and Medical Leave Act*

Next, the Court addresses the parties' FMLA claims.  Under the FMLA, eligible

employees are entitled to a total of 12 workweeks of unpaid leave during any 12-month period

"[b]ecause of a serious health condition that makes the employee unable to perform the function

of the position of such employee."  29 U.S.C. § 2612(a)(1)(D).  Leave need not be taken as a 12-

week block, but may be taken "intermittently or on a reduced leave schedule when medically

necessary."  29 U.S.C. § 2612(b)(1).  When employers "interfere with, restrain, or deny the

[employee's] exercise of or the attempt to exercise" FMLA rights, FMLA gives employees a

private right of action to seek equitable relief and money damages against such employers.  29

U.S.C. § § 2615(a)(1), 2617 (a).

To preserve the availability of and to enforce the FMLA rights, the Eleventh Circuit has

recognized that FMLA creates two types of claims: "interference claims, in which an employee

asserts that his employer denied or otherwise interfered with his substantive rights under the Act,

and retaliation claims, in which an employee asserts that his employer discriminated against him

because he engaged in activity protected by the Act."  Strickland v. Water Works and Sewer Bd.

of the City of Birmingham, 239 F.3d 1199, 1206 (11th Cir. 2001).  Plaintiff asserts both an

interference claim and a retaliation claim against Defendants.

*FMLA Interference Claim*

To state an interference claim under FMLA, the employee need only show by a

preponderance of the evidence that he "was entitled to the benefit denied." Id. at 1207.  Plaintiff

must demonstrate that (1) he was entitled to a substantive FMLA right, and (2) Defendants

denied him that right.  Id. at 1208.  Plaintiff does not have to allege that his employer intended to

deny the right; the employer's motives, in contrast to a retaliation claim, are irrelevant. See id.

To sustain an interference claim, Plaintiff must establish that he suffered a "serious health

condition."  Russell v. N. Broward Hosp., 346 F.3d 1335, 1340 (11th Cir. 2003).  Furthermore,

because not all leave requested or taken for medical reasons qualifies for FMLA's protections,

"employers have a statutory right to require an employee requesting FMLA to obtain

certification that attests to the employee's eligibility for such leave from a health care provider."

Cash v. Smith, 231 F.3d 1301, 1307 (11th Cir. 2000); see also 29 U.S.C. § 2613(a).

Defendants assert two arguments as to why Plaintiff was not entitled to leave under

FMLA: (1) Plaintiff did not suffer a "serious health condition" that made him unable to perform

the functions of his position, and (2) even assuming Plaintiff did suffer a "serious health

condition," the medical certifications Plaintiff provided did not qualify Plaintiff for FMLA leave.

### *Serious Health Condition*

Defendants first contend that Plaintiff did not suffer a "serious health condition," and

therefore he did not qualify for FMLA leave.  The regulations define "serious health condition"

as:

> [A]n illness, injury, impairment, or physical or mental condition that involves . . .
> (2)    Continuing treatment by a health care provider.  A serious health condition
>        involving continuing treatment by a health care provider includes any one or more
>        of the following:
> (i)    A period of incapacity (ie., inability to work, attend school or perform other
>        regular daily activities due to the serious health condition, treatment therefor, or
>        recovery therefrom) of more than three consecutive calendar days, and any
>        subsequent treatment or period of incapacity relating to the same condition, that

also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (eg., physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider. . . .

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition.  A chronic serious health condition is one which:

(A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;

(B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and

(C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc. ).

29 C.F.R. § 825.114.

Defendants argue that under the above-cited paragraph (i) of the FMLA regulations, Plaintiff cannot establish that he suffered from a FMLA qualifying serious health condition because Plaintiff cannot show he was absent from work for more than 72 continuous hours as a result of his symptoms.  Plaintiff responds that he suffers a chronic serious health condition and qualifies for  FMLA under paragraph (iii), not paragraph (i), of the regulations, and paragraph (iii) does not require a period of incapacity for more than 72 hours.  Indeed, the FMLA regulations state that "[a]bsences attributable to incapacity under paragraphs (a)(2)(ii) or (iii) qualify for FMLA leave even though the employee . . . does not receive treatment from a health care provider during the absence, and *even if the absence does not last more than three days*." 29 C.F.R. § 825.114(e) (emphasis added).

The evidence in the record creates an issue of fact as to whether Plaintiff has a chronic serious health condition as defined under paragraph (iii) so as to qualify Plaintiff for FMLA leave.  The evidence shows that Plaintiff has a history of back pain and stomach and intestinal

12

problems, that Plaintiff made periodic visits to his physician and was treated with prescription medications.  Furthermore, Plaintiff had been previously granted FMLA leave for these problems, and Plaintiff's physician had certified that Plaintiff's conditions qualified as a chronic serious health condition under FMLA multiple times beginning in 2002.  A jury could find from the evidence in the record that Plaintiff suffers a FMLA qualifying chronic serious health condition as defined by paragraph (iii) of the regulations.

Defendants next contend that Plaintiff's symptoms cannot qualify as a chronic serious health condition because a chronic serious health condition requires a "period of incapacity" and Plaintiff was not incapacitated.  "Incapacity" under the FMLA refers to "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom."  29 C.F.R. § 825.114(a)(2)(i).  As evidence that Plaintiff was not incapacitated, Defendants point to certain activities that Plaintiff stated he was able to perform on certain days he did not report to work, including walking to the playground and caring for his three young children.  (P depo. p. 48. 73, 78, 81).  The Eleventh Circuit has recently held that "a demonstration that an employee is unable to work in his or her *current job* due to a serious health condition is enough to show that the employee is incapacitated, *even if that job is the only one the employee is unable to perform*."  Hurlbert v. St. Mary's Health Care Sys., Inc., ___ F.3d ___, 2006 WL 345823, *7 (11th Cir. 2006) (emphasis in original).

Therefore, even if Plaintiff exercised and cared for his children on the days he missed work, if Plaintiff can show his health conditions caused him to be unable to work his job as a line attendant at Athens Packaging, Plaintiff can show he was incapacitated.  The Court finds that based on Plaintiff's testimony, the medical evidence documenting Plaintiff's symptoms, and the

lack of evidence to the contrary, there are genuine issues of fact relating to Plaintiff's incapacity that preclude summary judgment for Defendants on this issue.  See, e.g., Rankin v. Seagate Tech., Inc., 246 F.3d 1145, 1148-1149 (8th Cir. 2001) (plaintiff's affidavit testimony that she was "too sick to work" combined with medical records showing she suffered from the same symptoms were sufficient to create a genuine issue of material fact regarding plaintiff's incapacity); Marchisheck v. San Mateo County, 199 F.3d 1068, 1074 (9th Cir. 1999) (holding that a plaintiff's declaration that "I just did not and could not do anything for four or five days" creates "a disputed issued of fact and precludes summary judgment on the issue of 'incapacity.'").

*Medical Certifications*

Defendants next contend that Plaintiff's FMLA claims fail as a matter of law because none of Plaintiff's medical certifications are sufficient to qualify Plaintiff for FMLA leave, and therefore Defendants properly denied his FMLA leave requests for failure to sufficiently certify his leave.  FMLA expressly permits employers to require that requests "be supported by a certification issued by the health care provider of the eligible employee," as long as the employer gives notice of the requirement and the consequences of failing to provide adequate certification. 29 U.S.C. § 2613(a).  A certification relating to a chronic serious health condition is sufficient if it states (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; and (4) a statement that the employee is unable to perform the functions of the position of the employee.  29 U.S.C. § 2613(b).  Defendants claim the certifications do not meet these sufficiency requirements and therefore Plaintiff's claims fail as a

14

matter of law.

First, Defendants argue that the medical certifications are insufficient as a matter of law because none indicate that Plaintiff's conditions caused him to be unable to perform his job. Defendants point to the last, most detailed medical certification Plaintiff submitted on September 29, 2003. The September 29th certification states in part:

>   3.   Page 4 describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition qualify under any of the categories described? If so, please check the applicable category.
>
>   (1)____ (2)____ (3) ____ (4) __✓__ (5) ____ (6) ____, or None of the above ___
>   (On page 4, the form states: "A 'Serious Health Condition' means an illness, injury impairment, or physical or mental condition that involves one of the following:
>   4. <u>Chronic Conditions Requiring Treatment</u>
>   A chronic condition which:
>   >   (1) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>   >   (2) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>   >   (3) May cause episodic rather than a continuing period of incapacity (*e.g.*, asthma, diabetes, epilepsy, etc.).)
>
>   4.   Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:
>
>   *Abdominal Pain.*
>   *Back Pain.*
>
>   5. a.   State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity if different):
>
>   *Dates patient seen in office: 4-18-02, 3-6-03, 7-29-03, 9-9-03, 9-29-03.*
>
>   b.   Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described in item 6 below)?

15

*His medical condition may require him to be absent and/or late to work at certain times.*

    c.     If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity.

      *Not incapacitated*

   7. a.    If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?

      *No.*

    b.     If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)?  If yes, please list the essential functions the employee is unable to perform.

      *Unknown*

Defendants contend that based on the foregoing answers to questions 5c, 7a and 7b, Plaintiff's physician specifically found that Plaintiff was not presently incapacitated and did not certify Plaintiff's medical conditions rendered Plaintiff unable to work, and therefore Defendants were not obligated to grant Plaintiff FMLA leave.

Contrary to the Defendants' arguments, however, Plaintiff's physician's answers on the September 29th certification do not make the certifications inadequate as a matter of law.  The answers on the form are ambiguous at best.  In answering question 3, the doctor certified that Plaintiff had a chronic serious health condition that caused him episodic periods of incapacity. In answering question 5c, the doctor answered that Plaintiff was not presently incapacitated. These answers, however, are not contradictory.  A jury could determine that the answer to question 3 certified that Plaintiff's conditions caused him periods of incapacity and that the

16

doctor's answer to 5c was a testament to the fact Plaintiff was not incapacitated *at the particular time Plaintiff obtained the certification*.  In fact, there is evidence in the record that on the dates Plaintiff obtained the medical certifications from his physician, he was not suffering from any symptoms related to his health conditions.  Furthermore, the doctor's "Unknown" response to question 7b, "is the employee unable to perform any one or more of the essential functions of the employee's job," also does not make the certification invalid.  While the FMLA does require a statement that the employee is unable to perform the functions of the job, a jury may determine that the doctor did not have adequate information to specifically answer question 7b and that the doctor's answer to question 4, "his medical condition may require him to be absent and/or late to work at certain times" was sufficient to satisfy the requirement that Plaintiff was unable to perform the functions of his job.

Defendants also argue that the certifications were insufficient as a matter of law because the certifications failed to give any guidance as to the proper duration of incapacity or when treatment might be necessary.  When all the certifications Plaintiff submitted are taken together, the certifications state that Plaintiff suffered from a chronic serious condition that may cause him to intermittently miss work, provide a diagnosis for Plaintiff's conditions, state dates on which the conditions commenced, and state the dates on which Plaintiff was seen by his doctor.  Combined with the fact Plaintiff had previously been granted FMLA leave twice and that human resources did not specify the deficiencies in Plaintiff's certifications, the Court finds that, although Plaintiff's physician did not specifically state the duration of the conditions, a reasonable jury may find the certifications as a whole provided the substance of the information required by the FMLA for a certification to be considered sufficient.  With such evidence before

it, the Court cannot find the certifications are inadequate as a matter of law.

A jury could also determine that Plaintiff was not at fault for failing to provide information that Defendants did not request.  See Miller v. AT&T Corp., 250 F.820, 835-36 (4th Cir. 2001) (court found summary judgment for employer inappropriate where employer did not request certain information employee failed to provide on the employer's certification form). Plaintiff was informed that he was denied FMLA leave due to incomplete/insufficient certifications, only being told that "required information was left blank."  In response to the five certifications Plaintiff submitted to human resources between July 29, 2003, and September 29, 2003, Plaintiff was never informed of the specific information he needed to provide for a complete/sufficient certification.  From the record, it appears Defendants wanted a certification showing that the exact dates Plaintiff missed work were because of his serious health conditions. Defendants point out that none of the certifications provided dates that correspond to or account for any of the dates Plaintiff was absent from work. Not only does the certification form not request such information, this information is not required by law.  Under the FMLA regulations, "[a]bsences attributable to incapacity [due to a chronic serious health condition] qualify for FMLA leave *even though the employee . . . does not receive treatment from a health care provider during the absence*. . . ."  29 C.F.R. § 825.114(e) (emphasis added).  It will be up to a jury to decide whether to accept Plaintiff's testimony that he was, in fact, absent from work on those days because of his serious health condition[s].

Whether or not the evidence will ultimately sustain inferences in Plaintiff's favor that will allow him to prevail on his claims, Plaintiff has raised sufficient issues of material fact as to his FMLA interference claim to survive Defendant's Motion for Summary Judgment.

18

*FMLA Retaliation Claim*

When asserting a FMLA retaliation claim, the employee must show that "his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." Russell, 346 F.3d at 1340. When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, the Court applies the same burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for evaluating Title VII discrimination claims. See Brungart v. Bellsouth Telecomm. Inc., 231 F.3d 791, 798 (11th Cir. 2000). In order to state a claim of retaliation, an employee must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000). On summary judgment, the employee must raise only a material issue of fact, which he may do through reasonable inferences, regarding each element of his claim. Id.

Defendants first argue that Plaintiff's retaliation claim fails because he did not engage in statutorily protected activity, again because he did not have a serious health condition for which he was entitled leave and because he cannot show his conditions precluded him from performing his job as a line attendant. Because the Court has found genuine issues of material fact as to whether Plaintiff had a serious health condition for which he was entitled leave and whether the medical certifications were adequate to certify his leave and/or whether Plaintiff's employer satisfied its obligations under FMLA, the Court finds Plaintiff has likewise created a genuine issue of material fact as to whether he engaged in statutorily protected activity as required for a FMLA retaliation claim.

As to the second element of Plaintiff's retaliation claim, it is undisputed that Plaintiff suffered an adverse employment action when he was suspended and finally terminated due to excessive absences.  As to the third element, Defendants argue Plaintiff cannot show that the decision to terminate Plaintiff was causally related to Plaintiff's requests for FMLA leave because Defendant provided multiple opportunities for Plaintiff to provide sufficient certification for FMLA leave.  Plaintiff's respond that the causal connection is clear because Defendants terminated Plaintiff on October 2, 2003, one day prior to the deadline Defendants had established for Plaintiff to submit additional medical documentation showing his absences were protected by FMLA and with knowledge by October 1, 2003 that Plaintiff had been referred to a specialist, a gastroenterologist, for additional treatment.  Plaintiff also points to the close temporal proximity between Plaintiff's requests for FMLA leave and the termination.  See Brungart, 231 F.3d at 799 ("Proximity in time is sufficient to raise an inference of causation.").  Based on this evidence, Plaintiff has raised issues of material fact to each of the elements of a prima facie case of retaliation.

Upon this showing, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination.  Defendants' only reason for terminating Plaintiff is due to Plaintiff's excessive absences under the no-fault attendance policy.  If the fact-finder concludes that Plaintiff should have been granted FMLA leave for those absences, then Defendants cannot show Plaintiff's termination was legitimate.  Therefore, summary judgment for Defendants on Plaintiff's retaliation claim is inappropriate.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [Doc. 27] and

Defendant's Motion to Strike [Doc. 42]  are hereby **DENIED** .


**SO ORDERED,** this 30th day of March, 2006.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

SSH/aeg